## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

KARLA D. MCKNIGHT                                                        PLAINTIFF

v.                                              CIVIL ACTION NO. 1:21-CV-00139-GHD-DAS

RENASANT BANK                                                       DEFENDANT

### OPINION GRANTING DEFENDANT'S MOTION TO DISMISS

Presently before the Court is the Motion to Dismiss filed by Defendant Renasant Bank [10], in the face of a Complaint filed by Plaintiff Karla D. McKnight alleging a violation of the Americans with Disabilities Act Amendments Act ("ADAAA") [1]. For the reasons stated herein, the Defendant's Motion to Dismiss shall be granted.

### I.    Factual and Procedural Background

The Plaintiff is a resident of Pontotoc County, Mississippi [1 at ¶ 1]. The Defendant is a corporation located in the State of Mississippi [*Id.* at ¶ 2]. The Plaintiff worked for the Defendant as a senior payroll assistant [*Id.* at ¶ 5]. While the Plaintiff was employed by the Defendant, her husband contracted COVID-19; consequently, the Plaintiff was required by the Defendant to take medical leave, effective July 15, 2020 [*Id.* at ¶ 6]. While on medical leave, the Plaintiff contracted COVID-19, and was hospitalized for five days [*Id.*]. Due to severe lung problems, she was admitted into the hospital's intensive care unit, where she remained for the full five days [*Id.*]. She was treated for COVID-19 and a related case of pneumonia [*Id.*]. After receiving a negative COVID-19 test, the Plaintiff returned to work on August 10, 2020 [*Id.* at ¶ 7].

1

The Plaintiff did not have any complaints about her work performance prior to her medical leave but upon her return, she allegedly began to receive complaints from her immediate supervisor [*Id.* at ¶ 9]. On August 20, 2020, the Plaintiff received an unsatisfactory performance review, and was discharged on September 9, 2020 [*Id.* at ¶ 8; 1-2]. She was unable to find subsequent employment for a period of approximately six months [1 at ¶ 14].

The Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 13, 2020, alleging that her susceptibility to COVID-19 qualified as a disability and that she was discharged because of her COVID-19 illness and the hospitalization that she undertook as a result of the disease, which in turn qualified as a record of having had a disability [1-2]. On June 10, 2021, she received from the Commission a Notice of Right to Sue under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, or the Genetic Information Nondiscrimination Act [1-3]. She filed her Complaint on September 2, 2021, alleging that she was discharged in violation of the Americans with Disabilities Act [1 at ¶ 13]. Specifically, she argues that her case of COVID-19 and hospitalization rendered her unable to perform any of her "ordinary life activities for a short period of time," and that this inability "means that she had a record of having had a disability" [*Id.* at ¶ 10]. She further argues that the Defendant regarded her as having a disability [*Id.* at ¶ 11]. Thus, she presents two potential theories for liability under the ADA, one related to her claim of a "record of impairment" and the other to her claim of being "regarded as" having a disability, as those terms are used in the ADAAA.

On November 4, 2021, the Defendant filed its Motion to Dismiss [10] and corresponding Memorandum in Support [11], pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6). In these documents, the Defendant argues that the Plaintiff failed to qualify under the "record of

2

impairment" prong of the ADAAA because her five-day hospitalization for COVID-19 was too brief to satisfy this requirement [10 at ¶ 2]. It further argues that the Plaintiff fails to present a facially plausible claim as to her allegation that the Defendant regarded her as having an impairment [*Id.* at ¶ 3]. Put succinctly, the Defendant argues that the Plaintiff's claims fail "because the ADA does not cover claims related to a temporary illness from which no limitations resulted" [11 at 1].

On November 15, 2021, the Plaintiff filed her Response in Opposition to the Defendant's Motion to Dismiss [12] and its corresponding Memorandum Brief in Opposition [13]. In these documents, the Plaintiff argues that her Complaint sufficiently states a plausible claim [*Id.* at 1]. The substance of this argument can be summarized into a few points: the Defendant relied on pre-pandemic cases, COVID-19 is distinguishable from the matters in those cases, and that the Plaintiff's COVID-19 illness was severe enough to warrant the term "disability" [*Id.* at 2-4]. As to the "regarded-as" claim, the Plaintiff argues that the Defendant perceived her as a having a disability because her "supervisor had repeatedly made comments about [her] missing work" and "[her] COVID-19 illness [was] the reason [she] missed work" [*Id.* at 5].

On November 29, 2021, the Defendant filed its Reply in Support of its Motion to Dismiss [16]. In it, the Defendant argues that the Plaintiff failed in multiple ways to state a plausible claim [16 at 1]. Specifically, the Defendant challenges the Plaintiff's claim that hospitalization is sufficient to establish that an impairment is substantially limiting under the "record of impairment" prong of the ADAAA [*Id.* at 2-5]. The Defendant also argues that comments regarding an absence from work due to a past case of COVID-19 do not mean that an employer perceived an employee as suffering from an existing case of COVID-19, and that the law requires the Plaintiff to demonstrate suffering under an existing impairment rather than one from the past [*Id.* at 6-7].

3

On December 20, 2021, the Defendant filed a Motion for Leave to File Supplemental Brief, intending on presenting the Court with recent guidance from the EEOC regarding COVID-19 and the ADAAA [17]. The Court granted this Motion in an Order filed on January 4, 2022 [18], and on January 5, 2022, the Defendant filed its Supplemental Memorandum in Support of its Motion to Dismiss [19]. In this Document, the Defendant presents the new EEOC guidance and argues that it supports its arguments in favor of dismissal [*Id.*]. On January 18, 2022, the Plaintiff filed her Supplemental Memorandum Brief in Opposition to the Defendant's Motion to Dismiss, in which she argues that the new EEOC guidance does not help the Defendant's case [20].

The matter is now ready for review.

## II.     **Legal Standards**

### A. **Dismissal Under Rule 12(b)6**

When considering a Rule 12(b)(6) claim, the Court is limited by the allegations in the complaint itself, along with any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 Fed.App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). The complaint must contain facts that, if accepted as true, would support a claim for relief that is facially plausible. *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). A claim is facially plausible when the facts underlying the claim allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Webb v. Morella*, 522 Fed.App'x 238, 241 (5th Cir. 2013) (quoting *Fernandez–Montes v. Allied Pilots*

4

*Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). Dismissal is warranted when a plaintiff fails to present sufficient facts to support the elements of the causes of actions articulated in the complaint, and has thereby failed to advance their complaint beyond mere speculation. *Emesowum v. Houston Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (citing *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955). "Factual allegations that are 'merely consistent with a defendant's liability stop short of the line between possibility and plausibility of entitlement to relief,' and thus are inadequate." *Walker v. Beaumont Independent School District*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).

### B. The Americans with Disabilities Act, as Amended

The Americans with Disabilities Act ("ADA") and the Americans with Disabilities Amendments Act ("ADAAA") are the cornerstone legislations in this area. The ADAAA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). In this context, the law defines the term "disability" in three ways: "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A-C).

    i.    **The First and Second Prongs of the Definition of "Disability" under the ADAAA – "A Physical or Mental Impairment That Substantially Limits One or More Major Life Activities of Such Individual" and "A Record of Such an Impairment"**

"Permanency, not frequency, is the touchstone of a substantially limiting impairment." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 (5th Cir. 1997). "The ADA requires an individualized inquiry beyond the mere existence of a hospital stay." *Id.* at 317. The fact that

5

hospitalization alone does not automatically equate to a substantially limiting impairment is also implied by the recent EEOC guidance on ADA claims related to COVID-19. *See* U.S. Equal Employment Opportunity Commission, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (last updated March 14, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (herein "EEOC Guidance on COVID-19 and the ADA"). The relevant section of the guidance, which was updated on December 14, 2021, lays out the Commission's policy on COVID-19 claims of "disability" under the ADAAA. *Id.* at § N.1 The guidance makes clear that not every case of COVID-19 will be considered a "disability," and that an individualized assessment and case-by-case determination are necessary. *Id.* However, it notes that "[a] person infected with the virus causing COVID-19 who is asymptomatic or a person whose COVID-19 results in mild symptoms similar to those of the common cold or flu that resolve in a matter of weeks—with no other consequences—will not have an actual disability within the meaning of the ADA." *Id.* at § N.2. Likewise, "[i]mpairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe." *Id.* (quoting App. to 29 C.F.R. § 1630.2(j)(1)(ix)).

The EEOC guidance provides examples of individuals with COVID-19 cases that substantially impact a major life activity; these examples all relate to issues that are "ongoing but intermittent" or are lasting or expected to last for several months. *Id.* at § N.4. Examples of individuals with impairments that do not substantially limit a major life activity include individuals with issues that resolve within several weeks who do not face any further symptoms or effects. *Id.*

All of this aligns with pre-COVID jurisprudence on the definition of the term "disability"

6

for the purposes of ADA discrimination claims. A host of cases from across the nation has found that impairments that only last for relatively short periods of time are not substantially limiting and thus do not qualify under the term "disability" under the first prong of the statute. See, e.g., *Francis v. Hartford Bd. of Educ.*, 760 Fed.Appx. 34, 36-37 (2nd Cir. 2019) (finding that the plaintiff's shoulder and knee injuries, which restricted the plaintiff for a matter of months, did not constitute a substantial limitation as defined by the ADAAA); *Robinette v. Univ. of Miss. Med. Ctr.*, 2021 U.S. Dist. LEXIS 179213, at *15-16 (S.D. Miss. 2021) (holding that a torn tendon, which required four weeks of recuperation, was not substantially limiting); *Wood v. Gilman Bldg. Prods. Inc.*, 769 Fed.Appx. 796, 800 (11th Cir. 2019) (holding that neither an ankle injury that required a thirteen-week absence nor a knee injury that required two or three days of rest were substantially limiting because in each case the Plaintiff did not have any impairment by the time that he returned to work); and *Clay v. Campbell County Sheriff's Office*, 2013 WL 3245153, at *3 (W.D. Va. 2013) (holding that kidney stones that required the Plaintiff to remain away from work for approximately two weeks did not qualify as an substantial limitation because it was a "temporary, one-time issue").

In sum, an impairment is not always considered to be substantially impactful on a major life activity, and an impairment that is not substantially impactful does not satisfy the ADA definition of "disability" under its first or prongs.

### ii. The Third Prong of the Definition of "Disability" under the ADAAA – "Being Regarded as Having Such an Impairment"

An individual would meet the third prong of the definition of the term "disability" if the individual were able to establish that a prohibited action had been taken against the individual "because of an actual or perceived physical or mental impairment whether or not the impairment

7

limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). However, the term "disability" under this third prong "shall not apply to impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.* The Fifth Circuit has held that a surgery requiring the patient to be out of work for two weeks and limited in their capabilities for six to eight weeks was a transitory and minor impairment, because the actual or expected duration of any impairment related to the underlying medical condition was less than six months. *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298 (5th Cir. 2020).

As per the EEOC, "[a] person is 'regarded as' an individual with a disability if the person is subjected to an adverse action (e.g., being fired, not hired, or harassed) because the person has an impairment, such as COVID-19, or the employer mistakenly believes the person has such an impairment, unless the actual or perceived impairment is objectively both transitory (lasting or expected to last six months or less) and minor." EEOC Guidance on COVID-19 and the ADA at § N.6. In line with the statute, the EEOC notes that for this prong of the definition of the term "disability," "whether the actual or perceived impairment substantially limits or is perceived to substantially limit a major life activity is irrelevant." *Id.* at § N.7.

Several Circuit Courts of Appeals have held that the language of the third prong, specifically the word "having," requires a finding of liability only when the employer perceives the employee to have a current and existing impairment at the time of the alleged discriminatory act, as opposed to having had such an impairment in the past. See, e.g., *EEOC v. STME, LLC*, 938 F.3d 1305, 1318 (11th Cir. 2019); *EEOC v. BNSF Ry. Co.*, 902 F.3d 916, 923 (9th Cir. 2018); and *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1113 (8th Cir. 2016).

### III. <u>Analysis</u>

To reiterate, the Plaintiff alleges in her Complaint that she contracted COVID-19 and spent five days in the intensive care unit of a hospital as part of her treatment for this disease, severe lung problems, and a related case of pneumonia [1 at ¶ 6]. After these five days, she was discharged, and she returned to work on August 10, 2020, after receiving a negative result on a COVID-19 test [*Id.* at ¶ 7]. Less than two weeks later, the Plaintiff was given an unsatisfactory performance review [*Id.* at ¶ 8]. She was discharged on September 9, 2020, approximately one month after returning to work, and at least that long after receiving a negative result on a COVID-19 test [*Id.*].

The Plaintiff alleges that her immediate supervisor, an individual identified in the Complaint as Sides, made "nitpicking complaints" about her work after her return from medical leave, but had not complained about her work prior to that point [*Id.* at ¶ 9]. She later clarifies that Sides made comments on the Plaintiff's evaluation that were about the Plaintiffs missing work "at a time when Defendant knew all of the missed work was due to COVID-19" [*Id.* at ¶ 11].

She further claims that her "COVID-19 hospitalization and related pneumonia precluded [her] from performing any of the ordinary life activities for a short period of time" and that this "inability to perform any type of activity for a short period of time means that she had a record of having had a disability" [*Id.* at ¶ 10]. She also claims that she "will have permanent harm in the sense she will always worry about whether her symptoms will return" [*Id.*]. This later point regarding worry is far too speculative to merit consideration, and so the Court will not address further. However, returning to the Plaintiff's substantive claims, she argues that Sides' comments meant that the Defendant regarded her as having a disability [*Id.* at ¶ 11].

Thus, the Plaintiff alleges that she falls under the second and third prongs of the definition

for the term "disability": having a record of an impairment that substantially limits one or more major life activities and being regarded as having such an impairment [*Id.* at ¶¶ 6-11]. The Court disagrees, and will address each of these separate claims in turn.

As noted above, the relevant case law holds that impairments that last for relatively short periods of time are generally not considered to be substantially limiting. See *supra* Part II.B.i. The EEOC has indicated that the same should be true for COVID-19 cases. See EEOC Guidance on COVID-19 and the ADA at §§ N.2-N.4. The Court sees of no reason to diverge from these holdings. The Plaintiff was hospitalized in the intensive care unit for five days; she then recovered from the illnesses afflicting her, returned to work, and was discharged nearly a month later. The Plaintiff, as per the language of her Complaint, hangs her hat on the identity of the diseases in question—COVID-19 and pneumonia—and her hospitalization in an intensive care unit. However, these facts, on their own, do not equate to a substantially limiting impairment, especially given the fact that she was incapacitated for only five days and that she is not suffering from any ongoing or intermittent symptoms, conditions, or effects—much less one that would be expected to last for several months.

This same logic holds true for the Plaintiff's claim regarding the third prong of the definition of the term "disability" under the ADAAA. The Plaintiff's five-day cases of COVID-19 and pneumonia—after which she tested negative for COVID-19 and after which she has not suffered any further symptoms, conditions, or effects related to these diseases—are minor and transitory, and therefore fall outside the bounds of the third prong of the "disability" definition. See 42 U.S.C. § 12102(3)(B). This is especially true given the fact that the Plaintiff's malady only lasted five days, far less than the "actual or expected duration of 6 months" language used in the statute to describe the term "transitory." *Id.* Thus, the Plaintiff's sickness can be considered

transitory, and she fails to show why it should not be considered "minor" other than invoking the fearsome connotations of the words "hospitalization," "intensive care unit," and "COVID-19" [1 at ¶¶ 6-11]. As noted above, these terms on their own are insufficient to show that an impairment is not minor. See supra Part II.B.ii. Given these sources, the Court is not inclined to infer that a five-day case of COVID-19, after which the patient has apparently recovered in her entirety, should not be considered minor, just because the Plaintiff would bid it do so through her conclusory allegations.

Even were this not so, the Plaintiff's case would still fail because the language of the statute requires her to allege that she had a current and existing impairment at the time of her discharge at the hands of the Defendant. Because she has not done so, her claim as to the third prong of the definition of the term "disability" must fail.

## IV. Conclusion

The Court notes the severity of the COVID-19 pandemic that continues to afflict the world and the seriousness of the disease underlying it. It is clear that this disease can be lethal at times. The Court does not wish to minimize the health risks of COVID-19. It is clear that this disease can be lethal at times, and that an individual case of COVID-19 has the potential to develop into a life-threatening event. But just because a case of COVID-19 can become severe does not mean that it always will. As the EEOC guidance on the subject makes plain, just as there can be major cases of COVID-19, there can also be minor cases of COVID-19. EEOC Guidance on COVID-19 and the ADA at §§ N.2-N.4. Under the facts espoused in the Plaintiff's Complaint, the Court finds that the Plaintiff's illness was one such case.

For the above-stated reasons, the Court finds that the Defendant has successfully made their case in favor of dismissal under Fed. R. Civ. P. 12(b)(6). For that reason, the Defendant's

Motion to Dismiss [10] is well-taken, and shall be granted.

An Order in accordance with this Opinion shall issue this day.

THIS, the 2nd day of May, 2022.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE

12